NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 1 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PATRICIA LOPEZ, as a surviving parent and personal representative of the estate deceased Anthony Lopez; CAESAR LOPEZ, surviving parent of deceased Anthony Lopez, | No.   22-15278 |
| | D.C. No. 2:19-cv-04764-DLR |
| Plaintiffs-Appellees, | MEMORANDUM* |
| v. | |
| CITY OF MESA; HEATH CARROLL, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted July 6, 2023
San Francisco, California

Before:  NGUYEN, COLLINS, and LEE, Circuit Judges.
Dissent by Judge LEE.

Defendants City of Mesa and officer Heath Carroll (collectively

"defendants") appeal the district court's denial of qualified immunity at summary

judgment.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Patricia and Caesar Lopez ("plaintiffs"), the surviving parents of Anthony

Lopez ("Lopez"), brought this action against defendants under 42 U.S.C. § 1983

for excessive force in the shooting death of their son during a traffic stop.

Defendants moved for summary judgment. The district court denied qualified

immunity on claims of excessive force under the Fourth Amendment, interference

with familial relations under the Fourteenth Amendment, and wrongful death under

state law.

A denial of qualified immunity is reviewed de novo. *Villanueva v.

California*, 986 F.3d 1158, 1165 (9th Cir. 2021). Our review of a denial of

qualified immunity is "limited exclusively to questions of law" and we take all

disputed facts in favor of the plaintiff. *Eng v. Cooley,* 552 F.3d 1062, 1067 (9th

Cir. 2009). In determining the qualified immunity issue, the court asks two

questions: (1) "[t]aken in the light most favorable to the party asserting the injury,

do the alleged facts show the officer's conduct violated a constitutional right"; and

(2) "if a violation could be made out on a favorable view of the parties'

submissions," was the right "clearly established." *Saucier v. Katz*, 533 U.S. 194,

201 (2001).

1. Under the Fourth Amendment, the use of force on a suspect is assessed

for reasonableness based on the totality of the circumstances. *Graham v. Connor*,

490 U.S. 386, 396 (1989). Among the factors to consider are "the severity of the

2

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The district court correctly denied qualified immunity on the plaintiffs' Fourth Amendment claim because, construing the facts in the light most favorable to plaintiffs, we conclude that every reasonable officer in Carroll's position would have recognized that shooting and killing Lopez constituted excessive force.

On July 21, 2018, Officers Thranum and Carroll approached Lopez's car which was stopped at an intersection without its headlights on. Officer Thranum pulled up behind Lopez's car, while Officer Carroll, in another cruiser, pulled up on the passenger side of Lopez's car. Lopez failed to comply with Officer Thranum's request for his keys, and instead reached for his gear shift. Officer Carroll pointed a taser at Lopez, thrust his arm into the open window and yelled commands for Lopez not to put the car in drive. Rather than comply, Lopez slowly reversed his car and collided into Thranum's police vehicle right behind him. Officer Carroll was knocked back, quickly regained his footing, and fired nine shots through Lopez's passenger window, killing him. Meanwhile, Officer Thranum had retreated to her car, uninjured.

Officer Carroll testified that he shot Lopez to protect Officer Thranum and himself, because he mistakenly believed that Officer Thranum had been injured

and was under Lopez's vehicle.  Officer Carroll also testified that he believed that he could be further injured if Lopez drove his car into him.  We have reviewed videos of the incident from the officers' bodycams, and we conclude that a reasonable trier of fact could find Officer Carroll's testimony to be not credible. Construing the facts in the plaintiffs' favor, as we must at this stage of the proceedings, we hold that any reasonable officer would have realized that use of deadly force was unreasonable.  It is undisputed that Carroll did not see Officer Thranum fall or hear her cry out.  Officer Thranum never put any limbs inside Lopez's car and moved straight backwards when Lopez reversed.  Lopez backed up his car slowly, moving at just six miles per hour when he knocked into the police cruiser.  The video shows that the car was not in motion when Officer Carroll shot Lopez nine times.  Officer Carroll stated that he continued shooting until Lopez removed his hand from the gear shift.  Under the totality of the circumstances of this case, as construed in plaintiffs' favor, every reasonable officer would have perceived that Lopez did not pose any immediate danger to either officer such that the use of deadly force was justified without pausing to assess the situation.

2.   To establish a violation of the plaintiffs' Fourteenth Amendment due process right of familial association, the officer's conduct must "shock[] the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  That can be

4

shown either by a "deliberate indifference" standard or a "purpose to harm" standard. *Id.* We agree with defendants that the conduct of Officer Carroll must be evaluated under the "purpose to harm standard of culpability" because the incident involved an "evolving set of circumstances that took place over a short time period necessitating 'fast action.'" *Id.* at 1139–40 (citation omitted). Here, a reasonable trier of fact could conclude that Officer Carroll acted with a purpose to harm "unrelated to the legitimate object of arrest." *Id.* at 1140 (citation omitted); *A.D. v. California Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013). And, for the reasons we have explained, when the facts are viewed in the Plaintiffs' favor, every reasonable officer in Officer Carroll's situation would have understood that the immediate use of deadly force was so unnecessary that it did not "serve[] the legitimate purpose of stopping a dangerous suspect." *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017). Accordingly, the district court correctly denied qualified immunity on the Fourteenth Amendment claim.

3. We may exercise pendent appellate jurisdiction of a state law claim if the state law issues are "inextricably intertwined" with the qualified immunity question on interlocutory appeal here. An issue is "inextricably intertwined" if "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000).

Here, the state claim for wrongful death under A.R.S. § 13-410(C) is

5

"inextricably intertwined" with the federal claims on the qualified immunity question, and we therefore exercise pendent jurisdiction over this claim. Because the jury could determine that Officer Caroll's use of deadly force was unreasonable, the City of Mesa is not entitled to summary judgment on this claim.

**AFFIRMED**.

*Patricia Lopez v. City of Mesa*, No. 22-15278

LEE, Circuit Judge, dissenting:

The majority correctly concludes that a reasonable jury could find that Officer Carroll used excessive force when he shot Anthony Lopez, given that Lopez's car reversed fairly slowly. But I disagree that the violation was clearly established at the time of the incident.

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104, 1152 (2018) (citation omitted). So "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)).

No binding precedent squarely governs the specific and unique facts here: While Lopez reversed his car relatively slowly, his car still struck Officer Carroll, hitting his arm and causing him to drop his Taser. After being struck by a car and having his less-lethal weapon fall out of his hands, Officer Carroll then used his gun to fire repeatedly into the car.

The plaintiffs offer three cases to claim that the violation here was clearly established, but they are factually distinguishable because the officer there did not lose his weapon due to the suspect's actions. First, in *A.D. v. California Highway Patrol,* an officer shot twelve rounds at the plaintiff after his supervisor ordered him

1

to stop. 712 F.3d 446, 450 (9th Cir. 2008). Second, in *Adams v. Speers*, the officer voluntarily joined an ongoing car chase, then—after the chase ended, while another officer reached into the plaintiff's car with a less-lethal weapon—started firing. 473 F.3d 989, 991–92 (9th Cir. 2007). Third, in *Acosta v. City and County of San Francisco*, the officer chased two suspects on foot, then shot them as they got into a vehicle. 83 F.3d 1143, 1144 (9th Cir. 1996), *abrogated by Saucier v. Katz*, 533 U.S. 194 (2001). Officer Carroll did not pursue Lopez, fire after being ordered to stop, or begin shooting when other officers had the situation under control. Rather, he shot Lopez after he refused to follow orders and then suddenly struck him with his car, knocking the Taser out of his hand.

The Fourteenth Amendment violation also was not clearly established. Even if Officer Carroll wanted to punish Lopez for driving into a police cruiser, the plaintiffs have identified no cases establishing that it violated the constitution in these circumstances. They cite *A.D.*, but the officer there had been ordered not to shoot but chose to do so anyway. 712 F.3d at 451. And in *Porter v. Osborn*, the plaintiff had not yet harmed the police officers or placed them in danger. 546 F.3d 1131, 1133, 1137 (9th Cir. 2008). Here, Lopez hit Officer Carroll with the car and reversed in Officer Thranum's direction until he collided with her police cruiser.

I respectfully dissent.